UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Abdiaziz A. D.,

    Petitioner,

v.

William Barr, Kevin McAleenan, Thomas Homan, Peter Berg, and Kurt Freitag,

    Respondents.

Civ. No. 20-1218 (PAM/BRT)

**REPORT AND RECOMMENDATION**

Mary Georgevich, Esq., Immigrant Law Center of Minnesota, counsel for Petitioner.

Ana H. Voss, Esq., Ann M. Bildtsen, Esq., and David W. Fuller, Esq., Assistant United States Attorneys, and David John Walker, Esq., Freeborn County Attorney, counsel for Respondents.

BECKY R. THORSON, United States Magistrate Judge.

    Petitioner Abdiaziz A. D., a native of Kenya and citizen of Somalia, is currently in the custody of the Immigration and Customs Enforcement Agency ("ICE") pending the outcome of his ongoing removal proceedings. Petitioner seeks relief in the form of immediate release from custody pursuant to 28 U.S.C. § 2241. (Doc. No. 1, Habeas Pet.) For the reasons stated below, this Court recommends that the petition be granted.

**I.    Background**

    Petitioner Abdiaziz A. D. ("Petitioner") is a native of Kenya and citizen of Somalia who entered the United States of America on or about January 20, 2004, as a

refugee. (Doc. No. 17, Supp. Minner Decl. ¶ 4.) On July 13, 2006, Petitioner's status was adjusted to that of Lawful Permanent Resident. (*Id.*)

Since that time, Petitioner has had several criminal convictions.[1] On June 11, 2018, ICE encountered Petitioner at the Goodhue County Jail and, after a records check, determined that Petitioner was subject to removal proceedings. (*Id.* ¶ 14.) ICE placed a detainer request on Petitioner, and on June 12, 2018, the Goodhue County Jail notified ICE that Petitioner was being transferred to the Olmsted County Jail on a warrant. (*Id.*) ICE subsequently lodged a detainer request with the Olmsted County Jail. (*Id.*) On September 7, 2018, upon his release from the Olmsted County Jail, ICE arrested Petitioner and served him with Form I-862, Notice to Appear in Removal Proceedings, charging Petitioner as removable under sections 237(a)(2)(A)(ii) and 237(a)(2)(B)(i) of

---

[1] On March 13, 2013, Petitioner was convicted of Giving Peace Officer a False Name – Of Another Person (*id.* ¶ 5, Ex. A at 9); on February 11, 2014, he was convicted of Driving While Impaired (*id.* ¶ 6, Ex. A at 10); on March 4, 2014, he was convicted of Drugs-Possess/Sale Small Amount of Marijuana (*id.* ¶ 7, Ex. A at 10); on February 25, 2015, he was convicted of Theft (*id.* ¶ 8, Ex. A at 10); on November 20, 2015, he was convicted of Drugs-Possess/Sale Small Amount of Marijuana (*id.* ¶ 9, Ex. A at 10); on December 9, 2015, he was convicted of Theft (*id.* ¶ 10, Ex. A at 10); on March 21, 2016, he was convicted of felony Assault-3d Degree-Substantial Bodily Harm and, separately, Emergency Telephone Calls/Communications-Interrupt, Interfere, Impede, Disrupt 911 Call (*id.* ¶ 11, Ex. A at 10); on October 10, 2016, he was convicted of Drugs-5th Degree-Possess Schedule 1, 2, 3, 4 – Not Small Amount Marijuana (*id.* ¶ 12, Ex. A at 10); on September 27, 2017, he was convicted of felony Assault-5th Degree -2 or More Previous Convictions in 3 years (*id.* ¶ 13, Ex. A at 10); on September 7, 2018, he was convicted of felony Drugs 5th-Degree-Possess Schedule 1, 2, 3, 4 – Not Small Amount Marijuana, 3d Degree Operate Motor Vehicle-Alcohol Concentration .08 Within 2 Hours, and Driving While Impaired-Operate Motor Vehicle Under Influence of Alcohol (*id.* ¶ 15, Ex. A at 11).

2

the Immigration and Nationality Act ("INA") for two criminal convictions involving moral turpitude and one involving a controlled substance. (*Id.* ¶ 16, Ex. A at 2–4.)

On May 31, 2019, an Immigration Judge ("IJ") ordered Petitioner removed from the United States to Somalia. (Doc. No. 14-1, Pet.'s Ex. A at 7.) Both Petitioner and the Government reserved appeal. (Supp. Minner Decl. ¶ 17.) On June 27, 2019, Petitioner appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"). (*Id.* ¶ 18.) On November 20, 2019, the BIA dismissed Petitioner's appeal, causing his removal order to become administratively final. (*Id.* ¶ 19, Ex. B.) On December 30, 2019, the Embassy of Somalia issued a travel document for Petitioner valid through July 1, 2020, and that document was renewed (valid to December 18, 2020) on June 17, 2020. (*Id.* ¶¶ 20–21, Ex. C.)

On January 9, 2020, Petitioner filed a Motion to Reopen and a Motion for Stay of Removal with the BIA. (*Id.* ¶ 22.) On February 18, 2020, ICE conducted Petitioner's 90-day post-removal-order custody review, and ordered Petitioner detained for an additional 90 days. (*Id.* ¶ 23, Ex. D.) On March 19, 2020, the BIA denied Petitioner's Motion for Stay of Removal. (*Id.* ¶ 24, Ex. E.)

On May 20, 2020, Petitioner filed the present Habeas Petition in federal court. (Doc. No. 1.) On June 22, 2020, the Government filed its Response and the supporting Declaration of Angela Minner. (Doc. Nos. 5–6.) On July 9, 2020, Petitioner retained counsel, and on July 14, 2020, the parties filed a joint motion stipulating to supplemental briefing. (Doc. Nos. 8, 9.) This Court granted that motion. (Doc. No. 12.) On July 22, 2020, Petitioner filed his supplemental brief in support of his Habeas Petition, and on

3

August 5, 2020, the Government filed its supplemental response and two supplemental supporting declarations. (Doc. Nos. 15, 16, 17.) Then, on August 6, 2020, the BIA granted Petitioner's Motion to Reopen, remanded the record to the IJ to determine Petitioner's eligibility for cancellation of removal in light of a vacated criminal conviction, and denied Petitioner's motion for a stay of removal as moot. (Doc. No. 19-1, Pet.'s Ex. M.) Petitioner subsequently filed his Reply brief on August 19, 2020. (Doc. No. 18.)

## II.   Analysis

Petitioner argues that his prolonged and ongoing detention is unreasonable and violates his right to due process. (*See generally* Habeas Pet.; Doc. No. 13, Pet.'s Supp. Brief; Doc. No. 18, Reply.) Respondents—whose two briefs to this Court were both filed before Petitioner's Motion to Reopen was granted by the BIA—maintain that Petitioner's ongoing detention is constitutional under 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. Nos. 5, 15.)

### A.   Habeas Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject-matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." *Id.*; *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

The Court has subject-matter jurisdiction under § 2241 because Petitioner was detained within this jurisdiction in the custody of DHS at the time he filed this Petition, *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention without bail violates due process. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").

### B.  Petitioner is in Custody Pursuant to § 1226(c)

Section 236 of the INA governs the civil detention of aliens before and during removal proceedings. *See* 8 U.S.C. § 1226. In certain circumstances, such as when an alien has committed a specified type or types of criminal offenses, Congress has mandated that the alien be detained during removal proceedings. INA § 236(c), 8 U.S.C. § 1226(c). In *Demore*, the Court held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons . . . be detained for the brief period necessary for their removal proceedings." 538 U.S. at 513.

Section 236 should be distinguished from Section 241, which governs the detention of aliens who have already been ordered removed. 8 U.S.C. § 1231. In *Zadvydas v. Davis*, the Supreme Court held that "an alien's post-removal-period detention" may not exceed "a period reasonably necessary to bring about that alien's removal from the United States," and that six months of detention following the start of

the statutory removal period is a "presumptively reasonable period of detention." 533 U.S. 678, 689, 701 (2001).

Petitioner, as noted above, was ordered removed on May 31, 2019, and that order of removal became final when the BIA denied Petitioner's appeal on November 20, 2019. (Pet.'s Ex. A at 7; Supp. Minner Decl. ¶ 19.) At that point, Petitioner's detention was properly governed by § 1231 and *Zadvydas*.

That legal framework no longer applies, however, because on August 6, 2020, the BIA granted Petitioner's Motion to Reopen proceedings and remanded his case to the IJ to consider whether Petitioner is eligible for cancellation of removal in light of new developments. (*See* Pet.'s Ex. M.) As a consequence, Petitioner is no longer subject to the previous order of removal, and therefore his ongoing detention is governed by INA § 236. Despite this development, however, Petitioner remains in ICE custody because he is subject to mandatory detention pursuant to INA § 236(c) because he has been convicted of two or more crimes involving moral turpitude. *See* 8 U.S.C. § 1226(c)(1)(B); 8 U.S.C. § 1227(a)(2)(A)(ii); (Supp. Minner Decl., Ex. A at 9).

### C. Due Process Challenge to § 1226(c) Detention

In contrast to 8 U.S.C. § 1231, the Supreme Court has not established the contours of an alien's due process rights when detained without bail pursuant to 8 U.S.C. § 1226(c). In a concurrence in *Demore*, Justice Kennedy wrote: "were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for

6

other reasons." *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring). Recently, the Supreme Court held that the statutory scheme does not impose an implicit time limit on an alien's detention under 8 U.S.C. § 1226(c) or require periodic bond detention hearings for continued detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). The Court remanded for further proceedings, however, because the Ninth Circuit "had no occasion to consider respondents' constitutional arguments on their merits." *Id.* at 852.

The Eighth Circuit has not opined on this issue, but other circuits have read the Due Process Clause to impose some form of "reasonableness" limitation on the duration of detention that can be justified under § 1226(c). *See Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1214 (11th Cir. 2016); *Reid v. Donelan*, 819 F.3d 486, 494–96 (1st Cir. 2016) (opinion withdrawn on reconsideration by *Reid v. Donelan*, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018)); *Lora v. Shanahan*, 804 F.3d 601, 614 (2d Cir. 2015) (certiorari granted, judgment vacated, and case remanded for further consideration in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1138 (9th Cir. 2013); *Diop v. ICE Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003). The Second and Ninth Circuits, for example, have "applied a bright-line rule to cases of mandatory detention" and have held that "the government's statutory mandatory detention authority under Section 1226(c) . . . is limited to a six-month period, subject to a finding of flight risk or dangerousness." *Lora*, 804 F.3d at 614 (quoting *Rodriguez*, 715 F.3d at 1133).[2]

---

[2] This approach, it would appear, has now been rejected by the Supreme Court, at least as a matter of constitutional avoidance. *Jennings*, 138 S. Ct. at 846 ("Even if courts

The other circuits have held that "individualized review is necessary in order to determine whether the detention has become unreasonable." *Reid*, 819 F.3d at 495 (citing *Diop*, 656 F.3d at 233; *Ly*, 351 F.3d at 271). *Reid* set forth a number of factors to consider, *id.* at 500, but later withdrew its opinion "[i]n light of the Supreme Court's decision in *Jennings v. Rodriguez*." *Reid*, 2018 WL 4000993, at *1.

Courts within this district have recognized the due process concerns raised by indefinite pre-removal period detention. *See Muse v. Sessions*, Case No. 18-CV-54 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sept. 18. 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-CV-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018); *Tindi v. Sec'y, Dep't of Homeland Sec.*, Civil No. 17-3663 (DSD/DTS), 2018 WL 704314, at *3 (D. Minn. Feb. 5, 2018); *Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *3 (D. Minn. Sept. 25, 2017); *Phan v. Brott*, No. 17-cv-432 (DWF/HB), 2017 WL 4465285, at *4 (D. Minn. Sept. 14, 2017), *report and recommendation adopted*, 2017 WL 4460752 (D. Minn. Oct. 5, 2017); *Bah v. Cangemi*, 489 F. Supp. 2d 905 (D. Minn. 2017); *Moallin v. Cangemi*, 427 F. Supp. 2d 908, 925 (D. Minn. 2006).

In *Muse*, the court rejected the Government's argument that "the Due Process Clause imposes no limitation on the length of § 1226(c) detention when the government has not engaged in dilatory tactics." 2018 WL 4466052, at *3. Instead, the court found

---

were permitted to fashion 6-month time limits out of statutory silence, they certainly may not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy.").

8

that "a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable." *Id.* The court analyzed the following factors that were set forth by the First Circuit in *Reid*: (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) the delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Id.*[3] Applying these factors, this Court concludes that Petitioner's ongoing detention—without a bond hearing at which an IJ could consider whether he is a danger to the community or a flight risk—violates due process.

### D. Analysis of Reasonableness Factors

**1. Total length of detention to date**. Petitioner was detained on September 7, 2018 – 727 days ago. (Supp. Minner. Decl. ¶ 16, Ex. A at 2–4.) At the time, Petitioner's detention was pre-removal-period detention. Petitioner was not subject to a final order of removal until November 20, 2019, over a year later. (Pet.'s Ex. A at 7; Supp. Minner Decl. ¶ 19.) However, Petitioner's detention became subject to INA § 236 once again when his removal proceedings were reopened on August 6, 2020. (Pet.'s Ex. M.) Measuring Petitioner's detention from his arrest on September 7, 2018, this Court

---

[3] The court stated that the *Reid* factors "represent a reasonable framework for balancing the due process interests at stake" even though they were "originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c)," and "even though the First Circuit withdrew the *Reid* decision after the Supreme Court decided *Jennings*." *Muse*, 2018 WL 4466052, at *3 n.3 (quoting *Portillo v. Hott*, No. 1:18l-470, 2018 WL 3237898, at *7–9 (E.D. Va. July 3, 2018)).

9

finds that Petitioner's ongoing detention without a bond hearing for over twenty-three months is unreasonable. *See Muse*, 2018 WL 4466052, at *4 (explaining that detentions of eight and ten months have been found unreasonable under the Due Process Clause) (citing *Sajous v. Decker*, 18-CV-2447 (AJN), 2018 WL 2357266, at *1, *7 (S.D.N.Y. May 23, 2018) (eight months), *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months), *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, at *3–4 (S.D.N.Y. Mar. 13, 2015) (eight months)).

      **2.**    **The likely duration of future detention**. "In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals." *Muse*, 2018 WL 4466052, at *5. Here, Petitioner's Motion to Reopen was granted on August 6, 2020, and Petitioner represents that no hearing before the IJ has yet been set. (Reply 18.) Petitioner's previous case before the IJ, coupled with his original appeal to the BIA, took over fourteen months to play out. (Supp. Minner Decl. ¶¶ 16–19.) And that process did not include an appeal of the BIA's decision to the Eighth Circuit. Accordingly, it is reasonable to conclude that Petitioner's detention could last for many more months – this factor favors Petitioner.

      **3.**    **Conditions of detention**. "Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration. The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5 (internal citations omitted). Petitioner is currently detained at Freeborn County Jail. Although the record on this issue is not developed, it is reasonable to presume that Petitioner is being held

alongside inmates who are serving criminal sentences. *See id.* This factor also favors Petitioner.[4]

    **4.**  **Delays caused by the detainee**. There is no evidence in the record that Petitioner has engaged in dilatory tactics during his removal proceedings beyond vigorously contesting his removal, as is his right. *Muse*, 2018 WL 4466052, at *4 (citation omitted). This factor also favors Petitioner.

    **5.**  **Delays caused by the Government**. Similarly, there is no evidence in the record that the Government has engaged in any dilatory tactics. This factor favors the Government.

    **6.**  **Likelihood that proceedings will result in final order of removal**. Petitioner was initially successful in reopening his removal proceedings because he succeeded in having his 2017 conviction for fifth-degree assault—which formed the basis for the IJ's finding that Petitioner was ineligible for asylum and cancellation of removal—vacated. (*See* Pet.'s Ex. M.) Ultimately, as in *Muse*, neither party has previewed the arguments that the parties will make before the IJ (or the BIA on appeal) in

---

[4] This Court notes that Petitioner asserts that he should be granted the relief he seeks because his detention comes in the midst of the COVID-19 pandemic. However, Petitioner has not claimed that he is at heightened risk from the disease. *See* Ctrs. for Disease Control & Prevention, People Who Are at Higher Risk for Severe Illness (last visited Mar. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. And while there is evidence that two isolated cases of COVID-19 occurred at the Freeborn County Jail, there are none at present, and Petitioner himself has tested negative. (Doc. No. 16, Stasko Decl. ¶¶ 3, 6.) Moreover, the Freeborn County Jail has now taken measures to prevent the spread of COVID-19 in that facility and protect inmates. (*See id.*, ¶¶ 7–20.) Accordingly, this Court does not believe that the ongoing COVID-19 pandemic weighs either for or against either party.

the future, and therefore this Court "does not have a sufficient basis to determine" whether Petitioner is likely to be removed. 2018 WL 4466052, at *6. This factor is therefore neutral and does not favor either party. *See id.*

### E.  Conclusion: Petitioner's Detention Violates Due Process

Three of the six factors favor the Petitioner's argument that his detention is unreasonable, including the most important factors: the length of detention and expected duration of future detention. Only one factor favors the Government. Therefore, based on the evaluation of the above factors, this Court concludes that Petitioner's detention is unreasonable, and recommends that Petitioner's request for habeas relief be granted. This Court also recommends that an immigration judge be ordered to conduct a bond hearing within thirty days of an order granting habeas relief. *See Muse*, 2018 WL 4466052, at *6–7.

### III.  Recommendation

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **GRANTED IN PART**; and

2.  An immigration judge be ordered to provide Petitioner with a bond hearing within thirty days.

Date: September 3, 2020           *s/ Becky R. Thorson*_____
                                  BECKY R. THORSON
                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).